HENRY PIEPER, Appellant, v. JOHN KRUTZFELDT, Appellee.

**Animals:** NEGLIGENT CARE: CONFLICTING EVIDENCE: SUBMISSION OF ISSUE. In this action for injury to plaintiff's cattle due to lack of care, in which plaintiff testified that defendant was to pasture and care for them and defendant claimed that he was only to return them to the field if they escaped, that issue was for the jury.

**Same:** EVIDENCE: HARMLESS ERROR. Where it conclusively appeared that several of plaintiff's cattle died and others were in bad condition, due to want of care while pasturing on defendant's land, the admission of evidence touching the amount of damages was harmless, as the jury found for defendant and therefore must have found that he did not agree to care for the cattle.

**Evidence:** TELEPHONE COMMUNICATION. Admission of evidence touching a telephone communication was proper although the witness did not do the talking and heard but one side of the conversation, where the other party admitted having a conversation concerning the same subject matter which might have been the one testified to and no other telephone conversation was shown.

**Animals:** NEGLIGENT CARE: STATUTORY REGULATIONS. The statute imposes no duty upon anyone to provide feed and water for stock except the owner or those having their care and control: So that one having rented a field in which to pasture cattle, but who has not agreed to care for them, is not guilty of violating

the statute by leaving them in the field where the owner placed them without food and shelter.

*Appeal from Pottawattamie District Court.*— HON. W. R. GREEN, Judge.

WEDNESDAY, JUNE 26, 1912.

ACTION for damages resulted in a judgment for defendant. The plaintiff appeals.—*Affirmed.*

*Reed & Robertson* for appellant.

*John M. Galvin* for appellee.

LADD, J.—The plaintiff turned twenty-eight head of cattle into defendant's field of cornstalks about November 14, 1909. They were transferred to another field about December 1st following, and some three weeks later into still another. All of them, though in good condition when taken to defendant's premises, became very poor before being moved, some on December 25, 1909, and others in February, 1910. Four of them died. Plaintiff prayed damages and these were conclusively proven; the only issue being whether defendant was responsible therefor.

The evidence on the part of plaintiff tended to show that about October 24, 1909, he met defendant in Minden, when the latter said, "Henry, do you want to rent a

1. ANIMALS: negligent care: conflicting evidence: submission of issue.

cornfield to put cattle in?" and added, "There is clover threshed, and hay and plenty of water and another big stack." To this plaintiff responded: "If I rent it, I can not take care of it, because I am going in the hotel the first of the month." Defendant said: "You needn't bother your head about that. I will take care of

them just like I will my own." Subsequently plaintiff explained that defendant had said there were sixty or sixty-five acres of cornstalks and this was good pasture, that there was threshed clover hay and clover hay lying in windrows and a big straw pile to run to. On the other hand, defendant testified that he rented plaintiff one hundred acres of ground with forty-five acres of cornstalk and "some straw pile and some clover left that wasn't worth threshing," and, as soon as he got other corn gathered, he would take his cattle out, and plaintiff could put his cattle in. "I told him when his cattle were out I would drive them in. I didn't tell him I would put them in any shelter." On cross-examination he admitted having said he "would look after" the cattle, but, on redirect examination, testified he never told plaintiff he would provide a straw stack for the cattle, and that "I didn't promise to do anything else with Pieper's cattle except to bring them back if they got away."

Enough of the record has been stated to indicate that the evidence was in conflict as to whether defendant undertook to do more than bring back any of plaintiff's cattle should they escape from the field rented, and that that issue was for the jury.

II. The plaintiff testified to the value of the cattle when put in defendant's field and when taken therefrom. On cross-examination he testified that, after pasturing them during the summer of 1910, he had ten left, and had sold the other fourteen head. He was then asked what he got for them, and, over objection, answered: "Three seventy-five in South Omaha; that is, with some others." The evidence should have been excluded, but it, as other evidence tending to show they had increased in weight less than one hundred pounds each, was without prejudice, for, as it conclusively appeared that four had died and

2. SAME: evidence: harmless error.

all others had nearly starved while in defendant's fields, the jury in returning a verdict in his favor necessarily found that he had not undertaken to care for the cattle. Indeed, no other defense was interposed, and the court instructed the jury that, in event he had agreed to care for them, "the plaintiff will be entitled to recover the amount of damages which he has sustained by reason of the failure of the defendant to comply with the terms of the agreement." The objectionable evidence had no bearing save on the measure of damages, and, as the jury did not reach that matter, the error as said was without prejudice.

III. Mrs. Krutzfeldt testified to a conversation with the plaintiff over the telephone. On cross-examination she explained that her daughter did the talking, and that

3. EVIDENCE: telephone communication.

she did not hear plaintiff's voice, and only knew he was at the other end of the line from what her daughter, who was at the telephone, had said. Thereupon defendant moved that "the witness' testimony as to telephone conversation of the daughter" be stricken, stating the grounds. The motion was overruled and rightly so, for the plaintiff in his testimony admitted having talked over the telephone with a woman who might have been defendant's daughter at about that time. No other conversation over the telephone was alluded to during the trial, and both witnesses say the subject-matter was a sick or dying cow. The jury might have inferred that the conversation spoken of by plaintiff was that of which Mrs. Krutzfeldt testified, and, if so, her account of what her daughter said over the telephone was competent evidence, and could not properly have been stricken on motion. Had this motion been limited to her testimony of what defendant had said, it must have been sustained. There was no error.

IV. Exception is taken to the omission of the court to submit the issues raised in the second count of the peti-

tion to the jury. The allegations with respect to the
agreement to rent the field and care for the
cattle and negligent failure to comply there-
with were the same as in the first count,
and, in addition thereto,

4. ANIMALS:
negligent care:
statutory
regulations.

That said defendant willfully or negligently did de-
prive said cattle of necessary sustenance, and did will-
fully or negligently unnecessarily fail to provide the same
with proper food and shelter, and did willfully or neg-
ligently unnecessarily fail to protect said cattle from the
weather during the month of December, 1909, and that,
by reason of the acts and omissions of the defendant as
above stated in relation to said cattle, they were caused
unjustifiable pain, distress, and suffering, and that four
of said cattle during the time that the same were in the
possession of said defendant were thereby injured and
caused to die on account of such acts and omissions of the
defendant in relation to said cattle; that the acts and
omissions of the defendant in relation to said cattle con-
sisted in defendant keeping them in certain fields or parts
of his stalk field during said time which had been pastured
to such an extent, and which was in such a condition that
said cattle could not get enough sustenance therein to
sustain life; that said defendant did not furnish any
shelter or allow them to run to said straw pile or clover
stack during said time.

Plainly enough, if defendant, had undertaken to care
for the cattle, he must have been responsible under the
allegations of negligence for any injuries resulting from
the acts or omissions alleged in the second count, and there
was no error in so directing the jury unless, independent
of any agreement to care for plaintiff's cattle, defendant
was bound to furnish said cattle food and shelter.

Assuming then, as the jury must have found, that
defendant merely rented his field to plaintiff conditioned
only that he would turn in any cattle which might escape
therefrom and that he knew the cattle were weak, without
shelter or straw to lay on and with insufficient food and

did not furnish shelter and food for them, was he liable? Of course, he was under no obligation to supply either under his agreement. Was he by virtue of section 4969, Code Supplement, which declares that if any person deprive of necessary sustenance or unnecessarily fail to provide the same with proper food, drink, shelter or protection from the weather, or shall commit any other act or omission by which unjustifiable pain, distress, suffering or death is caused or permitted to any animal or animals, whether the acts or omissions herein contemplated be committed either maliciously, willfully or negligently, and if any person shall knowingly permit such act or omission or shall cause or procure same to be done, he shall be punished accordingly. If defendant did not undertake to care for the cattle, he was under no affirmative obligation to feed or shelter them, and therefore in allowing them to continue in the fields as their owner had placed them he can not be said to have deprived them of food or shelter. Nor do we think this statute imposes the duty to feed or shelter animals, though in need of either or both, on a stranger, even though he may be able to provide these. Only those owning or having the care or control thereof are required to provide "with proper food, drink, shelter or protection from weather," and it was not intended to impose on others who may learn of an animal's lack of proper care the duty to supply these at the peril of being punished by the criminal laws of the state.

There was no prejudicial error, and the judgment is *affirmed.*